**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DARIEN DASH,

       Plaintiff,

v.

ALEX COTTO (a/k/a ALEXANDER
RICHARD COTTO),

       Defendant.

_____/

## COMPLAINT

Plaintiff Darien Dash ("Plaintiff" or "Dash"), by and through his undersigned counsel, Reed Smith LLP, hereby files this Complaint against Defendant Alex Cotto (a/k/a Alexander Richard Cotto) ("Defendant" or "Cotto") and alleges as follows:

## INTRODUCTION

1. Defendant, Alex Cotto ("Cotto"), a former baseball operations executive, systematically misappropriated approximately $100,000 from his employer. When his theft was discovered and the professional relationship dissolved, he retaliated by defaming Plaintiff, Darien Dash — the husband of Cotto's former colleague, MLBPA ("Major League Baseball Players Association")-certified Player Agent Charisse Dash.

2.     Plaintiff, Darien Dash ("Mr. Dash"), is a private citizen. He is not a public figure. He has never been indicted for or convicted of any crime and has never abused his wife. Yet Cotto told people otherwise — accusing Dash of being a "felon" who was "indicted for embezzlement," a "scammer," and a domestic abuser.

3.     Cotto made these statements to at least one current Major League Baseball player who is a client of Charisse Dash, warning him to "be careful" — a transparent effort to frighten the player into abandoning her representation. The very next day, Cotto instructed the player to delete the text messages memorializing these accusations.

4.     Under Florida law, Cotto's accusations constitute defamation per se — they impute criminal offenses and tend inexorably to subject Dash to hatred, contempt, and disgrace. Plaintiff brings this action to vindicate his name and hold Cotto accountable. Cotto's conduct entitles Dash to compensatory, presumed, and punitive damages.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Plaintiff, Darien Dash, is a natural person and a citizen of the State of New Jersey.

7. Defendant, Alex Cotto, is a natural person and a citizen of the State of Florida.

8. The amount in controversy exceeds $75,000, exclusive of interest and costs. Dash has suffered and continues to suffer damages — including presumed damages arising from defamation per se — that far exceed the jurisdictional threshold.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Cotto resides in Wesley Chapel, Pasco County, Florida, which is within the Tampa Division of the Middle District of Florida.

10. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Cotto made and published the defamatory statements alleged herein while residing in this District, and upon information and belief, communicated them to recipients located within this District and elsewhere in Florida.

## THE PARTIES

11. Plaintiff, Darien Dash, is a natural person and citizen of New Jersey. He is a businessman, entrepreneur, and executive whose career spans decades as one of the nation's most highly sought-after strategic advisors. At

all relevant times, Dash has been a private individual who has not thrust himself into any public controversy bearing on Cotto's accusations.

12. Defendant, Alex Cotto (a/k/a Alexander Richard Cotto), is a natural person and citizen of Florida, residing at 4579 Pensford Court, Wesley Chapel, Florida 33543. For approximately four years, Cotto worked alongside Charisse Dash in the professional baseball agency world — first as Vice President of Baseball Operations at QC Sports, a global sports management agency headquartered in Atlanta, and later as an affiliated independent contractor providing baseball operations services to Movement Baseball through Cotto Consulting, LLC. That relationship ended when Cotto's misappropriation of approximately $100,000 in company funds came to light.

## FACTUAL BACKGROUND

13. Cotto's defamation of Darien Dash was a calculated and retaliatory act, undertaken to strengthen his position in his professional sphere, and to exploit relationships he believed he could manipulate.

14. Charisse Dash is an MLBPA-certified professional baseball agent. She previously served as Global Head of Baseball at QC Sports, a leading global sports, marketing, and entertainment agency headquartered in Atlanta, Georgia. After QC Sports ceased operating its baseball division, Charisse Dash founded Movement Baseball, Inc. ("Movement Baseball"), a Florida-based

agency dedicated to recruiting, managing, and representing elite professional baseball players, including current Major League Baseball players.

15. Darien Dash is Charisse Dash's husband. He has never been convicted of any crime, never been indicted for any offense, never defrauded anyone, and never abused his wife or any other person.

16. Before Cotto undertook his defamatory acts, Dash's reputation for lawfulness, honesty, and personal integrity was without blemish.

17. Defendant Cotto inserted himself into the Dashes' world in or about 2020, when he was retained as Vice President of Baseball Operations at QC Sports under a Partner Executive Services Agreement. He worked in close proximity to, and under the direction of, Charisse Dash.

18. When QC Sports eventually ceased its baseball operations and Charisse Dash established Movement Baseball, the original agreement expired by its own terms and was neither renewed nor assigned. Cotto, however, remained in the fold. Operating through a single-member LLC he controlled — Cotto Consulting — he continued providing baseball operations services to Movement Baseball as an affiliated independent contractor.

19. Over the course of that extended professional relationship, Cotto came to know the Dash family intimately. He developed detailed, firsthand knowledge of Darien Dash's character, background, reputation, and personal conduct.

20.    Over several years, while embedded at the heart of the agency's operations, Cotto engaged in sustained theft from the company. He made numerous unauthorized charges on the company credit card totaling approximately $100,000 — personal dining, travel, retail purchases, entertainment, lodging, and sundry other expenditures unrelated to business. None of these charges were authorized.

21.    Cotto did not merely overspend; he actively concealed his conduct by miscoding personal charges as business expenses, failing to submit documentation, and furnishing false descriptions of expenditures.

22.    Cotto never disclosed his diversion of funds or sought authorization. Upon information and belief, he also extracted value by retaining travel credits and loyalty rewards generated from company expenditures.

23.    The scheme unraveled when Movement Baseball conducted a review of credit card statements and initiated an internal audit. What it uncovered prompted a direct confrontation. Cotto's response was instructive: he denied certain allegations, grudgingly conceded others, refused to cooperate with the investigation, and proffered false justifications for charges he could not otherwise explain. He did not reimburse any portion of the approximately $100,000 he had taken.

24.    The professional relationship ended.

25.    Rather than accept responsibility for his misconduct, Cotto retaliated. His target was Darien Dash.

26.    Cotto understood that a player's trust in his agent extends to her family. If Cotto could persuade players that Charisse Dash's husband was a violent felon and a fraud, those players would have reason to leave Movement Baseball. The defamation of Darien Dash was the vehicle through which Cotto pursued that objective — a calculated effort to extract value from the professional ecosystem he had been caught plundering.

27.    The defamatory statements at the heart of this action were made recently — within the last month — and were directed at precisely the audience calculated to inflict maximum harm upon Dash.

28.    Cotto communicated directly with a current MLB player who is a client of Charisse Dash. The exchange occurred entirely outside any judicial, arbitral, or quasi-judicial proceeding. It bore no connection to any pleading, hearing, submission, or privileged proceeding of any kind. It was an extrajudicial communication between Cotto and a third party — one of Charisse Dash's own clients.

29.    In that conversation, Cotto told the player that Darien Dash had been "indicted for embezzlement" and was involved in "a situation that cost him his career." He further stated that Dash "also abuses his wife." And he admonished the player to "be careful."

30. These were not offhand remarks or expressions of personal opinion. Cotto presented them as concrete statements of verifiable fact and offered them as grounds for the player to sever his relationship with Charisse Dash.

31. Cotto admonished the player to "be careful" — a transparent effort to frighten the player into abandoning her representation.

32. In the same or related communications, Cotto also characterized Dash as a "felon" and a "scammer."

33. The player credited Cotto's statements and subsequently reported them. He understood these representations as factual assertions about Dash's character and criminal history.

34. Upon information and belief, the foregoing conversation was not an isolated incident. Cotto disseminated the same or substantially similar accusations to additional third parties on other occasions — including other clients of Charisse Dash, contacts within the professional baseball industry, and personal associates of the Dash family.

35. What transpired next illuminates Cotto's state of mind as much as the defamatory statements themselves.

36. The very next day after making the accusations described above, Cotto contacted the same player again.

37.    Cotto told the player that the player "may have legal problems because of the text messages" Cotto had sent concerning Darien Dash and Charisse Dash.

38.    Cotto instructed the player to "delete these text messages — erase all the conversations" about Darien and Charisse Dash. He warned the player: "you can have a problem and get pulled into this, and you don't want that, and it could be a serious problem, so erase all of your messages."

39.    Within twenty-four hours of making these accusations, Cotto was urgently seeking to destroy the documentary record. That is not the conduct of someone who believes he spoke truthfully. It is the conduct of someone who knows he lied and is scrambling to eliminate the proof.

40.    Upon information and belief, this was not the first occasion on which Cotto resorted to instructing others to delete communications. Public reporting and available materials reflect that Cotto was previously associated with the 2017 Atlanta Braves international signing scandal, in which the destruction or deletion of communications was a central issue and a focus of the ensuing investigation.

41.    Cotto's reflexive resort to directing a witness to destroy evidence — immediately upon making damaging false statements — is consonant with that prior pattern. It is probative of both his awareness that his conduct was

wrongful and the deliberate, premeditated character of his defamatory campaign.

42. Every accusation Cotto leveled against Darien Dash was false. Not "substantially true." Not a matter of opinion. Not a rhetorical characterization susceptible to dismissal as hyperbole. False.

43. Darien Dash has never been indicted for or convicted of any crime. The accusation that he is "a felon" or was "indicted for embezzlement" is categorically false.

44. Dash has never scammed, defrauded, or swindled anyone. He has no criminal record. The accusation that he is "a scammer" or was involved in a criminal "situation" is a fabrication.

45. Dash has never abused his wife or any other person. The accusation of domestic violence is a baseless, malicious invention.

46. This is not a case of careless repetition or secondhand rumor. Cotto worked alongside Charisse Dash for years and knew the Dash family personally. He knew that every accusation he made was false. He manufactured these accusations entirely and directed them at a specific audience to serve a specific objective.

47. Cotto's urgency in seeking to destroy evidence demonstrates that he knew he was lying. In the alternative, he acted with reckless disregard for

truth or falsity by leveling grave accusations without any factual basis or effort to verify them.

48.    At minimum, and in the further alternative, Cotto was negligent. He failed to exercise the degree of care that any reasonably prudent person would observe before publicly accusing another human being of being a felon, a con artist, and an abuser.

49.    Cotto's statements were not made in furtherance of any legitimate interest or on any occasion that would give rise to a recognized privilege under Florida law. They were motivated by personal animus, a desire for retaliation, and the self-interested goal of poaching clients and inflicting harm on the Dash family.

50.    The damage Cotto has inflicted is real, substantial, and ongoing. Those who heard his accusations — including at least one current MLB player who is a client of Dash's wife — have come to regard Dash with suspicion and distrust. His standing in his community has been materially diminished.

51.    Dash has suffered significant emotional distress, humiliation, and mental anguish. Being falsely branded as a felon, a scammer, and a domestic abuser has caused profound personal suffering, affecting his family relationships, social standing, and his sense of personal dignity.

52.   Because Cotto's statements constitute defamation per se under Florida law, Dash is entitled to presumed damages without proving specific pecuniary loss.

53.   Cotto's conduct was intentional, willful, and malicious. He acted with express malice — his primary motive was to inflict harm. His conscious disregard for Dash's rights warrants punitive damages.

54.   Plaintiff will seek leave to amend this Complaint to assert a specific claim for punitive damages under Florida Statutes § 768.72, upon a reasonable showing by evidence in the record or proffered by Plaintiff furnishing a reasonable basis for recovery of such damages.

55.   All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

<u>COUNT I</u>
**DEFAMATION PER SE**

56.   Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 55 as though fully set forth herein.

57.   On multiple occasions, as alleged above, Cotto published false and defamatory statements of fact about Dash to third parties — including, but not limited to, accusations that Dash is a felon, was indicted for embezzlement, is a scammer, and physically abuses his wife.

58. The statements were published to third parties who understood them to be about Dash. They were false and unprivileged, made outside any judicial or other privileged proceeding.

59. Cotto knew the statements were false, or acted with reckless disregard for their truth or falsity. At minimum, he was negligent in failing to ascertain whether they were true before publishing them.

60. The accusations that Dash is a "felon," was "indicted for embezzlement," is a "scammer," and "abuses his wife" each independently constitute defamation per se because they impute criminal conductand tend to subject Dash to hatred, contempt, and disgrace.

61. Taken together, these statements brand Dash as a violent criminal, a convicted felon, a scammer, and a fraud — precisely the kind of reputational destruction the per se doctrine addresses.

62. Because Cotto is a nonmedia defendant and his statements constitute defamation per se, express malice and general damages are conclusively presumed under Florida law.

63. Dash is entitled to presumed and actual damages for reputational harm, emotional distress, and economic losses.

64. Cotto acted with express malice — his primary motive was to injure Dash and advance his scheme to poach clients and retaliate against the Dash family.

65. Dash is entitled to punitive damages upon compliance with the procedural requirements of Florida Statutes § 768.72.

## COUNT II
## DEFAMATION

66. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 55 as though fully set forth herein.

67. In addition to the statements actionable as defamation per se, Cotto published further false and defamatory statements about Dash to third parties, including characterizing Dash as a person involved in "a situation that cost him his career" and making other statements that, in context, created the false impression that Dash is a criminal, a fraud, and a dangerous individual.

68. To the extent any of Cotto's statements are determined not to independently constitute defamation per se, they are nonetheless actionable as defamation because they were false, were published to third parties, were defamatory in their natural meaning, and proximately caused Dash to suffer damage.

69. The statements were published to third parties who understood them to be about Dash. They were false.

70. Cotto knew they were false, or acted with reckless disregard for their truth, or at minimum was negligent in failing to determine whether they were true.

71. The statements were defamatory in that they tended to expose Dash to distrust, hatred, contempt, ridicule, and disgrace in the estimation of reasonable persons and to injure him in his personal and professional reputation.

72. As a direct and proximate result of Cotto's defamation, Dash has suffered and continues to suffer damages as set forth above.

**73.** Cotto acted with express malice. Dash is entitled to punitive damages upon compliance with the procedural requirements of Florida Statutes § 768.72.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, Darien Dash, respectfully requests that this Court enter judgment in his favor and against Defendant, Alex Cotto, and award the following relief:

a. Compensatory damages in an amount to be proven at trial, including but not limited to damages for injury to reputation, emotional distress, humiliation, embarrassment, mental anguish, and economic losses;

b. Presumed damages as permitted under Florida law for defamation per se;

c. Special damages for specific economic and pecuniary losses, in an amount to be proven at trial;

d. Punitive damages in an amount sufficient to punish Defendant and deter future misconduct, upon compliance with Florida Statutes § 768.72;

e. Pre-judgment and post-judgment interest as permitted by law;

f. Costs of suit, including reasonable attorneys' fees to the extent permitted by law;

g. Such other and further relief as this Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, Darien Dash, hereby demands a trial by jury on all issues so triable.

Dated: May 26, 2026

Descalzo Law P.A.
One Biscayne Tower
2 S. Biscayne Blvd.,
Miami, Florida 33131
Telephone:    305-489-1018
Facsimile:    305-489-3386

By: */s/ Marissel Descalzo*
**Marissel Descalzo, Esq.**
Florida Bar No. 669318
MD@DescalzoLaw.com
Service@DescalzoLaw.com